# Fey's Appeal.

*Municipalities—Public officers—Powers of boroughs—Expenses.*

The powers of officers of a municipality depend entirely on the provision of its charter, statutes and ordinances passed pursuant thereto, and such officers take nothing beyond the power so conferred.

If a statute prescribes the manner in which a municipal power shall be exercised this is generally mandatory and exclusive of all other methods so that any attempt to exercise it in a different manner will be void.

There is nothing in the Act of June 5, 1913, P. L. 445, authorizing a commission of water works to rent and equip offices, even if such is necessary to the proper discharge of its duty. If such expenditures are required, the borough council alone has authority to provide for them.

Under the Acts of June 9, 1911, P. L. 865, and June 13, 1889, P. L. 86, borough auditors are not entitled to the payment of seventy dollars each for their services where it appears that the borough had a population of less than five thousand; that the account was not lengthy or complicated; that the compensation for auditors fixed by the Act of June 13, 1889, P. L. 86, which was then in

force, was two dollars per diem; and that the auditors served but two hours a day while they were engaged on their report.

Argued Dec. 8, 1916. Appeal, No. 324, Oct. T., 1916, by George Fey, from judgment of C. P. Schuylkill Co., May T., 1915, No. 423, refusing certain surcharges In re Appeal from the Report of the Auditors of the Borough of Tamaqua. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Appeal from report of the auditors of the Borough of Tamaqua. Before BECHTEL, P. J.

The facts are stated in the opinion of the Superior Court.

*J. O. Ulrich,* for appellant, cited: Foehrenbach v. German-American T. & T. Co., 217 Pa. 331; Milford Borough v. Milford Water Co., 124 Pa. 610; Marshall v. Ellwood City Boro., 189 Pa. 348; Trainer v. Wolfe, 140 Pa. 279; Com. v. Gingrich, 21 Pa. Superior Ct. 286.

*Arthur L. Shay,* for appellees.

OPINION BY ORLADY, P. J., October 8, 1917:

This controversy is the direct result of substituting the judgment of borough officials for the plain and mandatory directions specified by the legislature. The powers of officers of a municipality depend entirely on the provisions of its charter, statutes and ordinances passed pursuant thereto, and such officers take nothing beyond the powers so conferred.

As stated by Judge COOLEY: The charter, or the general law under which they exercise their powers, is their constitution, in which they must be able to show authority for the acts they assume to perform. They have no inherent jurisdiction to make laws, or adopt regulations of government; they are governments of

enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government coming within a designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant. Consti. Lim. 6 Ed. 227.

And by Chief Justice STERRETT, in Lesly v. Kite, 192 Pa. 268, "Appellant's contention proceeds upon the erroneous theory that municipal corporations, or the officers thereof may do anything—not actually forbidden by law—which the caprice of councils or the executive officers may consider to be for the interests of the municipality. This is a mistake. Nothing is better settled than that a municipal corporation does not possess and cannot exercise any other than the following powers: (1), Those granted in express words; (2), Those necessarily or fairly implied in or incident to the powers expressly granted; (3), Those essential to the declared objects and purposes of the corporation,—not simply convenient but indispensable. Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the corporation, and therefore denied: Dillon on Municipal Corps., Sec. 89."

If the statute prescribes the manner in which the power shall be exercised, this is generally mandatory, and exclusive of all other methods so that any attempt to exercise it in a different manner will be void. The underlying principal of municipal administration is that common honesty and fair business methods shall control the disbursement of the public funds.

On April 17, 1915, the auditors of the Borough of Tamaqua filed in the Court of Quarter Sessions their report or statement of account of the borough treasurer, commissioners of water works, the chief burgess, receiver of taxes and board of health of the borough for the year ending December 31, 1914. An appeal to the Court of

Common Pleas was taken by a taxpayer, who filed a number of exceptions to the report, and the officials involved filed separate answers thereto. When an issue was framed by the court, subsequent thereto, by an agreement of counsel such items as required oral proof were withdrawn from the consideration of the court, and the questions involved were submitted to the court upon petition and answers. The hearing before Judge BECHTEL resulted in the surcharge of the town council for the following items,—for meals furnished the town council by Samuel Lasos, while making an inspection tour of the borough ($153.50), and for team hire to George Brewer ($10.50), while on the same mission; a payment to J. C. Walter, high constable ($3), for team hire in serving notices (it being claimed that he was unable to walk around and put up the notices); for expenses of a fire committee inspecting fire house equipment, etc., in eight cities in this and other states ($279); for carfare, meals, etc., of a committee to select electrical fixtures ($30): And in surcharging the water commission with an aggregate of $891.07 for items, in exceptions numbered 26, 27, 28, 29, 36, 38 and 39, representing unnecessary and unauthorized expenditures. To this finding the water commissioners filed eight, and the town council six exceptions, and on hearing by the court in banc the order made by Judge BECHTEL was modified so as to surcharge the town council with $164, instead of $473, and the water commissioners with the sum of $2.50, instead of $891.07. Unfortunately, the latter opinion does not furnish the items remitted from the surcharge or the reason therefor.

After a careful examination of the account as stated, the exceptions, the petition and answer, we are of the opinion that the conclusion reached first was correct, for the reasons stated in the opinion filed by Judge BECHTEL, and the final order entered should be reversed in so far as it conflicts therewith. We find nothing in the Act of June 5, 1913, P. L. 445, authorizing the Commission of

Water Works, to rent and equip offices, even if such is necessary to the proper discharge of its duty. Such a body is a branch of the municipality; is created at its suggestion, and has only the powers specially delegated to it. If such expenditures are required to discharge its functions, the town council alone has authority to provide for them.

Borough orders to B. D. Stover (No. 42), W. J. Wendell (No. 43), and William Lower (No. 44), representing payments of $70 to each of three borough auditors were alleged in the original exceptions to be excessive. The answer of the town council avers that the charge "Was reasonable and but fair compensation for the work done and time expended." The Act of June 9, 1911, P. L. 865, clearly outlines the duties of such auditors,—the report shall contain an itemized list of all receipts, expenditures and credits. These items are simply noted in the transcript as for "service" without mention as to character of work done or time employed. When we consider that Tamaqua is a borough having less than 5,000 (census of 1910) population; that the account is not lengthy or complicated; that the compensation for auditors as fixed by the statute, May 4, 1889, P. L. 86, 1 Stewart's Purdon 516, (which was in force at the time of this audit), was "two dollars per diem for each day necessarily employed in the duties of his office" the item of seventy dollars ($70) for each auditor is manifestly out of proportion to the reasonable services demanded, and the auditors failing to specify the time they were engaged, these items are prima facie exorbitant and should be marked for surcharge to the town council. Further it is alleged in arguments and not denied, that the auditors served but two hours per day while engaged in this service.

We are not convinced that the court below committed reversible error in not sustaining the other exceptions to the auditor's report. While the Act of June 9, 1911, P. L. 865, provides that "any such officer whose act or

neglect shall have contributed to the financial loss of any municipality or district shall be surcharged with the amount of such loss" and the same provision is reënacted in the revised Borough Code of May 14, 1915, P. L. 312, it cannot reasonably be urged, that the loose and irregular methods of this town council may find shelter behind such a provision. The difficulty lies in the fact that counsel having presented the case on the pleadings, without oral proof, we cannot separate the items in order to hold to any definite degree whether a loss was occasioned or its amount.

The judgment of the court below is reversed; the record remitted to the court below that a decree may be entered in accordance with this opinion.